UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
BRITTANY PRA,

*Plaintiff,*

-against-

DOUGLAS ELLIMAN, LLC, DOUGLAS ELLIMAN REALTY, LLC, and DOUGLAS ELLIMAN OF LI, INC.,

*Defendants.*
---------------------------------------------------------------------X

**Docket No.:**

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff Brittany Pra, as and for her Complaint, respectfully alleges, all upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 et seq., as amended ("Title VII"), and supplemental jurisdiction exists over the remainder of Plaintiff's claims under §296(1)(a) of the New York State Executive Law.

2. Venue is proper under 28 U.S.C §1391(b) and (d) because one or all of the Defendants maintain contacts within this District that would be sufficient to subject it to personal jurisdiction if this District were a separate State.

3. Plaintiff filed a charge of unlawful discrimination with the Equal Employment Opportunity Commission on April 12, 2022 and received a Notice of Right to Sue against Defendants on September 29, 2022.

**IDENTITY OF THE PARTIES**

3. At all relevant times mentioned herein, Plaintiff Brittany Pra ("Pra") was employed by Defendant Douglas Elliman, LLC, Douglas Elliman Realty, LLC, and/or Defendant Douglas Elliman of LI, Inc. until she was terminated on or about December 6, 2021, days after she advised the company that she had a miscarriage.

4. Defendant Douglas Elliman, LLC is a New York corporation that is authorized to and does business in the State of New York and, pursuant to its website, has headquarters at 575 Madison Avenue, in the County, City and State of New York.

5. Defendant Douglas Elliman Realty, LLC, is a New York corporation that is authorized to and does business in the State of New York.

6. Defendant Douglas Elliman of LI, Inc. is a New York corporation that is authorized to and does business in the State of New York.

7. Pra was employed by one or all of Defendants, or all Defendants form a single integrated entity that employed Pra, so that all Defendants are collectively referred to herein as "Douglas Elliman."

8. Douglas Elliman is one of the nation's largest independent residential real estate brokerages with approximately 6,500 agents and approximately 100 offices across the country, and leads the New York real estate market by sales volume

**BACKGROUND RELEVANT TO ALL CAUSES OF ACTION**

9. Pra began her employment with Douglas Elliman in September 2021, working at its offices in Huntington, New York.

10. Pra was hired as an administrative assistant and social media coordinator.

11. At all relevant times, Pra was qualified for her position based on her prior work experience.

12. Pra enjoyed her position and received positive feedback, and was happy in her career.

13. In late October 2021, Pra and her husband received the happy news that, after two years of trying, she was finally pregnant.

14. Because the pregnancy was so new, Pra did not tell anyone at work.

15. On the night of Saturday, November 27, 2021, Pra went to the hospital due to bleeding that would not stop.

16. Sadly, Pra was told that the pregnancy was not viable, and made an appointment with her doctor for the following Monday.

17. The following morning, Sunday, November 28, 2021, Pra emailed her two supervisors, Manager of Sales Scott Comer ("Comer"), who oversaw several offices, and Branch Manager Marilyn Perla ("Perla"), and advised them that she did not know if she would be in on Monday, stating:

> I don't know if I'll be in on Monday. I had a very traumatic event happen to me over the weekend. I have a doctor's appointment first thing in the morning. If I come in it will be after 9:30, I will have a doctor's note to explain what happened. I am so sorry, no one could have anticipated this, I am beside myself with pain for what I have experienced. Hope you understand. Hope everyone had a Happy Thanksgiving.

18. On the morning of Monday, November 29, 2021, Pra visited her doctor and he confirmed that Pra had a miscarriage and would need a surgical procedure, which was scheduled for that Thursday, December 2, 2021, and Pra's doctor told her to rest for the following week and not work.

19. Once Pra was able to process this news and compose herself, she called Perla and informed her that she had suffered a miscarriage over the weekend and that she would not be in for the rest of the week, as her doctor had scheduled her for surgery on Thursday.

20. Perla responded coldly, "We'll discuss at a later date" and hung up.

21. Pra had an incredibly difficult week that involved a lot of pain and visits to the doctor, and ultimately, on Thursday morning, Pra's doctor told her that she did not need surgery.

22. On Friday, December 3, 2021, Pra called Perla and told her she would be in on Monday.

23. Perla responded, "We'll discuss on Monday," which made Pra unsure, since there was nothing to "discuss," and Pra spent the weekend feeling afraid about what would happen when she arrived at work on Monday morning.

24. Pra arrived to work on Monday, December 6, 2021, at 9:00 am.

25. Comer was in the office, but Perla had not yet arrived, and Pra saw that the administrative assistant who normally works only weekends was at the office, which was confusing to her.

26. Comer called Pra into his office immediately and angrily stated, "What's wrong with you?"

27. Pra apologized for being out and said that she had a miscarriage and her doctor told her to rest all week.

28. Comer rolled his eyes and said, "This isn't working. Your health is unstable. We're letting you go."

29. Pra was stunned and did not know how to respond, so she left the office.

30. Pra decided to go to her parents' house for support and called them from the car to tell them she was coming and explained what happened at the office.

31. While Pra was driving, her father, unbeknownst to her, called Comer and asked if he had actually fired Pra, to which Comer said, "Yes."

32. Pra's father said that she had just had a miscarriage, and Comer laughed as if Pra's trauma was hilarious.

33. About a week later, Pra reached out to Douglas Elliman's human resources representative, which upon information and belief was through a third-party vendor, and spoke to a woman named "Amanda."

34. Amanda told Pra that Comer had stated that Pra had a neck injury, which Pra said was false.

35. Incredibly, Amanda responded, "I don't know why they're fabricating that," as though Pra would choose to cover up a neck problem with a miscarriage.

36. Amanda also stated that three or more days of absence are immediate grounds for termination, and they considered it "job abandonment," which were protocols that had never been communicated to Pra and, furthermore, Douglas Elliman knew that Pra had not abandoned her job because she was in regular contact with the company about her status.

37. Amanda asked Pra if she was aware that the other administrative assistant was switching from full-time to part-time, and Pra told her that she was aware.

38. Shockingly, Amanda then accused Pra of having planned the miscarriage to make it harder for the other assistant to switch to part-time.

39. Amanda also said that Pra "screwed the office over by having them scrambling to find someone to cover" for her, displaying Douglas Elliman's cruel and shameful attitude towards

Pra's miscarriage and medical condition.

40. As a result of Douglas Elliman's discriminatory conduct, Pra has suffered the adverse effects of discrimination, which includes damages to the quality of her life, her self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Pra into the future.

41. Here, Douglas Elliman's conduct towards Pra shows that it acted with willful or wanton negligence, malice, recklessness, or a conscious disregard of Pra's rights, or that its unlawful actions against Pra were so reckless as to amount to a disregard of Pra's rights, so that in addition to all the damages inflicted upon Pra and in addition to all the measure of relief to which he may properly be entitled herein, Douglas Elliman should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter it and others similarly situated from engaging in such conduct in the future.

**AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF PRA AGAINST DOUGLAS ELLIMAN FOR SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e-2**

42. Pra repeats, realleges and incorporates in full paragraphs 1 through 41 of this Complaint as though fully set forth herein.

43. The entirety of the acts which constitute and form this Cause of Action, as set forth above, all of which are deemed repeated and re-alleged herein as though said paragraphs were specifically set forth herein, were perpetrated upon Pra while she was in the course of her employment with Douglas Elliman.

44. Douglas Elliman's termination of Pra's employment immediately after learning of her miscarriage based on a vague and ambiguous claim that "this isn't working" and "your health is unstable" gives rise to a very real inference that the true basis was discrimination.

45. As a proximate result of Douglas Elliman's conduct, Pra has been adversely affected in her employment and in her normal life's pursuits, and Pra believes that the injuries she incurred by being subjected to Douglas Elliman's conduct complained of herein has and will continue to have a devastating effect upon her professional career, as well as the quality of her life.

46. Pra was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of Douglas Elliman's outrageous conduct in violation of Pra's human rights, all of which impacted her well-being and the quality of her life.

47. The aforementioned acts of Douglas Elliman constitute unlawful discrimination on the basis of sex against Pra in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 et seq. ("Title VII"), as amended by The Pregnancy Discrimination Act of 1978, which provides, inter alia, that:

> It shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

48. As a direct and proximate result of Douglas Elliman's violation of Title VII, Douglas Elliman is liable to Pra for damages, including punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

49. Here, the acts of Douglas Elliman were so egregious and were done with such bad-faith and/or reckless indifference for Douglas Elliman's protected rights under Title VII, that, in

addition to all the damages inflicted upon Pra and in addition to all the measures of relief to which Pra may properly be entitled herein, Douglas Elliman should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter Douglas Elliman and others similarly situated from engaging in such conduct in the future.

50. Pra, therefore, seeks compensatory damages on this First Cause of Action, including, among other things, for loss of earnings and loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as punitive damages, reasonable attorney's fees, the costs of this action and pre-judgment interest, in this Cause of Action.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PRA AGAINST DOUGLAS ELLIMAN FOR SEX DISCRIMINATION IN VIOLATION OF CHAPTER 18, ARTICLE 15 OF THE NEW YORK STATE EXECUTIVE LAW §296(1)(a)**

51. Pra repeats, realleges and incorporates in full paragraphs 1 through 50 of this Complaint as though fully set forth herein.

52. The entirety of the acts which constitute and form this Cause of Action, as set forth above, all of which are deemed repeated and re-alleged herein as though said paragraphs were specifically set forth herein, were perpetrated upon Pra while she was in the course of her employment with Douglas Elliman.

53. Douglas Elliman's termination of Pra employment immediately after learning of her miscarriage based on a vague and ambiguous claim that "this isn't working" gives rise to a very real inference that the true basis was discrimination.

54. Pra was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of Douglas

Elliman's outrageous conduct in violation of Pra's human rights, all of which impacted her well-being and the quality of her life.

55. The aforementioned acts of Douglas Elliman constitute unlawful sex discrimination against Pra in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) ("New York State Human Rights Law"), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice: (a) For an employer . . . because of the . . . sex . . . of any individual . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

56. As a direct and proximate result of Douglas Elliman's violation of the New York State Human Rights Law §296(1)(a), Pra was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Douglas Elliman's discriminatory conduct did and will continue to have a devastating effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Pra alleges to be in the amount of Two Million Dollars ($2,000,000).

57. Douglas Elliman, because of its violations of the New York State Human Rights Law, is also liable to Pra for punitive damages pursuant to §297(9) and reasonable attorney's fees pursuant to §297(10), in addition to pre-judgment interest and costs.

58. Here, Douglas Elliman's conduct towards Pra shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Pra's rights under the New York State Human Rights Law, or that its unlawful actions against Pra were so reckless as to amount to a disregard of Pra's rights, so that in addition to all the damages inflicted upon Pra and in addition to all the measure of relief to which Pra may properly be entitled herein, Douglas Elliman should

also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Douglas Elliman and others similarly situated from such conduct in the future.

59. Pra, therefore, seeks judgment against Douglas Elliman on this Second Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees, making a total of Five Million Dollars ($5,000,000).

**AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF PRA AGAINST DOUGLAS ELLIMAN FOR DISABILITY DISCRIMINATION IN VIOLATION OF §296(1)(a) OF THE NEW YORK STATE HUMAN RIGHTS LAW**

60. Pra repeats, realleges and incorporates in full paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61. Pra was in a protected class under the New York State Human Rights Law because she had or was regarded as having a "disability" as defined by Executive Law §292(21), namely "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques," and also had "a record of such an impairment," as a result of her miscarriage.

62. Up to and during the time of Douglas Elliman's wrongful, unlawful, and discriminatory termination against her, Pra was fully qualified for and capable of working for Douglas Elliman with or without a reasonable accommodation.

63. Given the circumstances surrounding Douglas Elliman's unlawful acts against Pra, including firing her just days after learning she had a miscarriage, there is a strong inference that the true motive for Douglas Elliman's adverse actions against Pra was disability discrimination.

64. The hostile, offensive, demeaning and intimidating work environment created by Douglas Elliman, as described herein, was unwelcome to Pra, as it would reasonably be to any person, and altered the terms, conditions and privileges of her employment.

65. As a proximate result of Douglas Elliman's conduct, Pra has been adversely affected in her employment and in her normal life's pursuits, and was caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated and demeaned.

66. The aforementioned acts of Douglas Elliman constitute unlawful disability discrimination against Pra in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) ("the New York State Human Rights Law"), which states that:

> It shall be unlawful discriminatory practice: (a) For an employer . . . because of the . . . disability . . . of any individual . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

67. As a proximate result of Douglas Elliman's conduct, Pra has been adversely affected in her employment, her well-being, in the quality of her life and in her normal life's pursuits, and Pra believes that Douglas Elliman's conduct complained of herein has and will continue to have a devastating effect upon her life, all of which Pra alleges to be in the amount of Two Million Dollars ($2,000,000).

68. Douglas Elliman, because of its violations of the New York State Human Rights Law, is also liable to Pra for punitive damages pursuant to §297(9) and reasonable attorney's fees

pursuant to §297(10), in addition to pre-judgment interest and costs.

69. Here, Douglas Elliman's conduct towards Pra shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Pra's rights under the New York State Human Rights Law, or that its unlawful actions against Pra were so reckless as to amount to a disregard of Douglas Elliman's rights, so that in addition to all the damages inflicted upon Pra and in addition to all the measure of relief to which Pra may properly be entitled herein, Douglas Elliman should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Douglas Elliman and others similarly situated from such conduct in the future.

70. Pra, therefore, seeks judgment against Douglas Elliman on this Third Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees, making a total of Five Million Dollars ($5,000,000).

**JURY DEMAND**

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants on the First Cause of Action in an award of compensatory and punitive damages to be determined at a trial of this matter; on the Second Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); and on the Third Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); plus, on each Cause of Action, pre-

judgment interest, the costs of this action and reasonable attorney's fees as is permitted under the law; and for such other and further relief as this Court deem just and proper.

**SCHWARTZ PERRY & HELLER LLP**
*Attorneys for Plaintiff*

By:______________________
BRIAN HELLER
DAVIDA S. PERRY
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565